IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LINDA S. KILBURN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06cv1095-CSC |
| | ) | (WO) |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge.

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** The plaintiff was 60 years old at the time of the hearing before the ALJ. (R 216). She has an eighth grade education.[4] (R. 217). The plaintiff's prior work experience includes work as a "Companion (domestic services)." (R. 22). The plaintiff alleges that she became disabled on April 1, 2004, due to back pain and nerve problems. (R. 59, 87). Following the administrative hearing, the ALJ concluded that the plaintiff has severe

---

[4] Kilburn testified that she quit school two weeks before completing the ninth grade. (R. 217).

impairments of "degenerative disc disease of the lumbar spine and deQuervain's disease."[5] (R.

19).  The ALJ found that the plaintiff's anxiety and arthritis "are not medically determinable

impairments."  (*Id.*)  The ALJ determined that

> **The claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently.  She cannot engage in climbing of ladders, ropes or scaffolds or in crawling**.  In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 416.929 and SSRs 96-4p and 96-7p.  The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p and 96-6p.  The reduction to the light exertional category of work and the finding of other non-exertional limitations reflects in part the effects of her mild to moderate pain that she experiences occasionally.  The claimant's medically determinable impairments could reasonably be expected to produce some pain, but the claimant's statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible.  She was not hospitalized for pain, was not referred to a pain clinic, engaged in a wide array of activities of daily living, and was not observed by doctors such as Dr. Anderson to be experiencing disabling symptoms.  See e.g. Exhibit 8f at 2-3.  The residual functional capacity is supported by the office notes of Dr. Anderson, the findings of Dr. Vyas, the observations of Dr. Brantley, the dearth of treatment sought and conservative treatment received, and the impressive array of activities of daily living.  It is also supported by the absence of medical findings based on medically acceptable clinical and laboratory diagnostic techniques that would support a more restrictive residual functional capacity.  While more optimistic about the claimant's condition than the aforesaid doctors, Dr. Harris' opinion that the claimant has no severe impairment at all supports a finding that she is not disabled.

(R. 19-20).

The ALJ concluded that the plaintiff could perform her past relevant work.

---

[5] Quervain's disease is defined as "painful tenosynovitis due to relative narrowness of the common tendon sheath" of the thumb.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 434 (24th ed.).

Consequently, the ALJ concluded that the plaintiff was not disabled. (R. 22).

**B. Plaintiff's Claims**. As stated by the plaintiff, she presents the following issues[6] for the Court's review:

1. The Commissioner's decision should be reversed, because the ALJ's residual functional capacity finding is not supported by substantial evidence.

2. The Commissioner's decision should be reversed, because the ALJ did not comply with Social Security Ruling 96-8p in assessing Ms. Kilburn's residual functional capacity.

3. The Commissioner's decision should be reversed, and an award of benefits should be entered because the evidence of record shows that Ms. Kilburn could not perform sustained work activities.

(Pl's Br. in Supp. of Compl. at 11-12).

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective

---

[6] In a footnote in her brief, Kilburn complains that "[t]he ALJ did not properly consider the combined effects of [her] impairments." (Pl's Mem. Br. at 15, fn. 29). However, the plaintiff's brief does not contain a discussion of any facts or legal authority to support her claim that the ALJ failed to properly consider her impairments in combination.

Moreover, the plaintiff was specifically advised, in the order of procedure entered on December 12, 2006, that "[c]laims or contentions . . . alleging deficiencies in the ALJ's consideration of claims or alleging mistaken conclusions of fact or law and contentions or arguments by the Commissioner supporting the ALJ's conclusions of fact or law **must include a specific reference, by page number, to the portion of the record** which (1) recites the ALJ's consideration or conclusion and (2) which supports the party's claims, contentions or arguments." (Doc. # 3 at 2-3) (emphasis in original). The burden is on the plaintiff to formulate arguments and grounds to support her contentions. Accordingly, the court declines to distill the plaintiff's generalized assertion into a cogent, adversarial argument.

medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). Within this analytical framework, the court will address collectively the plaintiff's claims.

The plaintiff alleges that the residual functional capacity finding of the ALJ "is not supported by medical opinions expressed by treating, examining, or non-examining physicians," and he did not properly assess her abilities on a function by function basis in accordance with Social Security Ruling 96-8p. The plaintiff also argues that she cannot perform sustained work activities. The Social Security Administration has developed a sequential evaluation process for determining if a plaintiff is disabled. 20 C.F.R. §§ 404.1520 and 416.920. As noted, the plaintiff's responsibility at step four of the sequential process is to demonstrate an inability to return to her past relevant work. *Lucas, supra.* After a plaintiff has shown that she cannot perform her past relevant work, the burden then falls upon the Commissioner to show that there are other jobs in the national economy that the plaintiff can perform.

The ALJ determined that the plaintiff could perform her past relevant work as a domestic companion because that work is performed at the light exertional level. (R. 22). The medical evidence fully supports his conclusion. Kilburn applied for social security disability benefits on July 20, 2004, alleging back pain, wrist pain and nerve problems. (R. 70). On

August 19, 2004, Kilburn underwent a physical consultative examination by Dr. Vijay Vyas at the behest of the Social Security Administration. (R. 98). At that time, she complained of back pain, depression, anxiety, and right wrist pain. (R. 98-99). Dr. Vyas noted that Kilburn was a "very vague historian. She does not give a proper history . . ." (R. 98). Dr. Vyas conducted a thorough physical examination and found

> MUSCULOSKELETAL: Cervical spine – There is no tenderness. No tenderness on the thoracic spine. There is no tenderness of the lumbar spine or sacroiliac joint on deep palpation. No tenderness in the hip joints. Extension, flexion and side to side movements of the cervical spine are normal. Normal ROM of both shoulders and elbows. The patient has increased temperature of her right wrist joint with mild to moderate restriction of extension and flexion of the right wrist. There is skin grafting done on her thenar eminence in the right hand from the previous injury several years ago. The left wrist has been normal. Hand grip is normal. Lying down straight, she was able to raise both her legs to a normal extent. Standing straight, she was able to bend down to a normal extent. She can stand on her heels as well as on her toes without any problem. The patient has a normal gait. She does not use any assistive device.
>
> NEUROLOGICAL: Power is normal both upper and lower extremities, Grade IV. Hand grips are normal bilaterally. Sensory - Touch, pain and vibration sense are intact upper and lower extremities. DTRs are 2+ bilaterally both upper and lower extremities. Higher functions are normal. Cranial nerves are intact.

(R. 100-01).

Dr. Vyas' impressions included

1. Possible muscle spasms of the lumbar region. There is no evidence of any osteoarthritis or any evidence of any lumbar radiculopathy clinically.
2. Anxiety with depression, by history.
3. Inflamed right wrist of recent onset, etiology to be determined.
4. History of hyperlipidemia.

(R. 101).

7

On August 22, 2004, Kilburn submitted to a mental consultative examination by Dr. Brantley, Ph.D. (R. 102). At that time, Kilburn complained of problems with her nerves. (*Id.*) Dr. Brantley noted that "there were no features of depression or anxiety. She was mood stable." (R. 103). He indicated that there was

> [n]o evidence of any debilitating anxiety or depression. Problems with anxiety have been appropriately treated with 10 mg of Valium taken once a day, and 100 mg of generic Senequan each night. No psychotic features, hallucinations, or delusions noted. The claimant reports no debilitating somatic concerns, but indicates that she has high cholesterol.

(R. 103).

Dr. Brantley opined that Kilburn "meets criteria for Generalized Anxiety Disorder (300.02), In Full Remission controlled by her two medications. This is a situational anxiety which is reactive to what goes on in her life. It certainly is not debilitating."[7] (R. 104). He also noted that Kilburn's progress was stable and she was presently employed. (*Id.*).

Treatment records also support the ALJ's residual functional capacity finding that Kilburn can return to her past relevant work. Kilburn has been treated by Dr. J.W. Johnson, a family practitioner, since March 2001. On March 9, 2001, Dr. Johnson conducted a routine check up on Kilburn. (R. 177). She made no complaint about back pain, wrist pain or anxiety. (*Id.*) On March 14, 2001, Kilburn had a mole removed. (R. 172). She had "no complaints." (*Id.*) On March 28, 2001, Kilburn complained to Dr. Johnson about anxiety related to her brother's terminal cancer. (R. 171). Dr. Johnson diagnosed Kilburn with "anxiety reaction,"

---

[7] On September 23, 2004, a non-examining state psychologist ascertained that Kilburn did not have a severe mental impairment. (R. 105).

and prescribed Valium and Sinequan.  (*Id.*).

On April 30, 2001,  Kilburn reported that she was feeling better.  (R. 170).  On May 30, 2001, Kilburn reported "doing pretty well."  (R. 169).  "She says she has some occasional sp[asms] in her back, but her back has been giving her less trouble than usual."  (*Id.*)  On July 30, 2001, Kilburn was "getting along pretty well."  (R. 165).  She reported sleeping better and taking one Valium a day.  (*Id.*)  On August 16, 2001, Kilburn reported "feeling well" with "no particular problems."  (*Id.*).  On November 14 and 28, 2001, she was still feeling well.  (R. 163, 161).

On January 15, 2002, Kilburn complained to Dr. Johnson "of being anxious" although the notation does not indicate why she was anxious.  (R. 160).  Nonetheless, Dr. Johnson diagnosed her as suffering from anxiety and prescribed more Valium.  (*Id.*)   On March 8, 2002, Kilburn reported "doing well" but requested a refill of her Valium prescription.  (R. 158).

On July 25, 2002, Dr. Johnson noted that Kilburn was "doing pretty well but needs a new prescription for Pravachol[8] and Valium.  She also has pain in her back still."  (R. 153).  He refilled her prescriptions and diagnosed chronic back pain.  (*Id.*)  On September 25, 2002, Kilburn was treated for a broken varicose vein.  (R. 152).  Dr. Johnson also refilled Kilburn's Valium prescription.  (*Id.*)

On November 1, 2002, Kilburn presented to Dr. Johnson to "check on her lab work."  (R. 149).  She reported that she was "getting along pretty well."  On December 2, 2002, she

---

[8] Pravachol is medication to treat high cholesterol.

9

was still doing "pretty well," but needed a refill on her Valium prescription.  She also complained about pain in her big toe which "[a]t the current time . . . is not bothering her but she said that a week ago it giving (sic) her a lot of pain."  (R. 148).  Dr. Johnson examined her feet but could not detect any abnormalities, swelling or discoloration.  (*Id.*).

On February 4, 2003, Dr. Johnson noted that Kilburn was "feeling well and having no particular problems."  (R. 147).  He wrote new prescriptions for Valium and Doxepin.[9]  (*Id.*). On March 4, 2003, Kilburn complained to Dr. Johnson of sporadic muscle cramps in her left calf.  (R. 144).  Dr. Johnson noted no abnormalities in her leg.  (*Id.*)  He did, however, prescribe Flexeril in addition to her Valium.  (*Id.*).  On June 10, 2003, Dr. Johnson noted that Kilburn "has chronic pain in her back and legs but she gets good relief with Flexeril and does not take any kind of pain medicine."  (R. 140).  Consequently, he refilled her Flexeril and Valium prescriptions.  (*Id.*)  Treatment notes for August 28, 2003, indicate that Kilburn was "doing well" on "Flexeril and Valium for her back pain. . . . She has no complaints but she needs a new prescription for Flexeril."  (R. 136).  On September 26, 2003, Dr. Johnson noted that there was "no change in the physical exam."  (R. 135).  On November 25, 2003, treatment notes indicated that Kilburn was "getting along pretty well with her medicines but she needs a new prescription for Flexeril and Valium."  (R. 134).

On March 23, 2004, Dr. Johnson again noted that although she had chronic back pain, Kilburn was getting "pretty good relief with Flexeril and Valium."  (R. 132).  On May 12, 2004, five weeks after she alleged she became disabled, Dr. Johnson noted that Kilburn was

---

[9] Doxepin is the generic name for Sinequan.  It is an anti-depressant.

10

"feeling well and having no particular problems except that she needs medication." (R. 131). On June 22, 2004, Kilburn complained to Dr. Johnson of right wrist pain. (R. 129). Although Kilburn believed her wrist was swollen, Dr. Johnson "could not detect any swelling of the wrist. She has compete ROM but she wants to take Ibuprofen for that." (*Id.*).

On July 23, 2004, Kilburn presented to Dr. Johnson complaining of "persistent pain in her right wrist and thumb." (R. 125). An x-ray showed "a 1.5 cm in diameter cystic lesion in the lunate bone of the right wrist. . . These are all relatively benign lesions, but could be a source of the patient's pain . . ." (R. 127). Dr. Johnson noted that he "could not see any swelling or discoloration or any problem with her forearm, wrist, thumb or any of the fingers." (*Id.*) The x-ray revealed "no abnormalities." (*Id.*). He prescribed Bextra for her wrist and thumb pain. (*Id.*)

On August 23, 2004, Kilburn again complained of swelling and wrist pain. (R. 124). Dr. Johnson did not observe any swelling. (*Id.*) Tests for inflammatory arthritis and gout were negative. (*Id.*) Dr. Johnson prescribed Bextra, Sinequan, and Valium.[10] He also suggested that Kilburn wear a cockup wrist splint. (*Id.*).

On September 14, 2004, Kilburn presented to Dr. Johnson complaining of wrist pain. (R. 123). Dr. Johnson's examination did "not reveal any gross abnormalities. I could not detect any swelling or discoloration." (*Id.*) He referred her to Dr. Landon Anderson, an orthopedic physician. (*Id.*)

Kilburn presented to Dr. Anderson on September 22, 2004 complaining of right wrist

---

[10] Kilburn's Flexeril prescription did not need to be refilled. (R. 124).

11

pain.  (R. 201).  Kilburn had some tenderness over the radial styloid and a positive Finkelstein's test.  (*Id.*)  Dr. Anderson diagnosed De Quervain's disease unrelated to the cystic lesion.  Dr. Anderson concluded that Kilburn's wrist x-ray showed "a little more than normal volar tilt to the distal radius."  (*Id.*)  Dr. Anderson suggested treating Kilburn with conservation measures.  He gave her a cortisone injection.  (*Id.*)

On October 6, 2004, Kilburn presented to Dr. Anderson complaining of puffiness and tenderness.  (R. 200).  Dr. Anderson did not observe any tenderness, nor was her Finkelstein test positive.  (*Id.*)  Dr. Anderson also noted

> She's got good flexion/extension of the wrist, equals the opposite side.  As I said, she doesn't have the tenderness over the radial styloid or the positive Finkelstein's.  I think she's probably got some discomfort there.  Did admit the injection helped but it took 3 or 4 days she said, which is not unreasonable.

(*Id.*)

On October 14, 2004, Kilburn was seen by Dr. Johnson.  He reported that she had "chronic back pain secondary to lumbar disc disease."[11]  (R. 122).

On October 27, 2004, Dr. Anderson noted that Kilburn was "really not tender over the radial styloid and tendon . . . "[d]oesn't hurt anymore.  She does have a weaker grip on that side."  (R. 199).  Kilburn was also complaining about having to use her left hand; Dr. Anderson noted that "[t]here is nothing particularly wrong about her using the left hand to do the heavier work."  (*Id.*)

On December 12, 2004, Kilburn presented to Dr. Johnson complaining about pain in

---

[11] The court notes that this is the first diagnosis of lumbar disc disease in the record and that there are no x-rays, MRIs or CT scans that confirm this diagnosis.

12

her toe. Dr. Johnson "could not see any deformities or abnormalities of the right foot in the first MTP joint area." (R. 121).

On December 13, 2004, Kilburn presented to Dr. Anderson complaining about her thumb and pain in her right big toe. (R. 198). She was also "tender over the radial styloid and has positive Finkelstein's." (*Id*.) Dr. Anderson diagnosed tendonitis and "some arthritic change." (*Id*.) He prescribed anti-inflammatories because Kilburn was reluctant to receive another shot. (*Id*.)

On January 3, 2005, Dr. Johnson noted that Kilburn was doing well but came in to get prescriptions for Flexeril and Valium. (R. 120). On January 11, 2005, Kilburn complained to Dr. Anderson about her thumb. (R. 197). At that time, he gave her another shot. (*Id*.).

Kilburn began seeing Dr. Steven Davis on February 21, 2005. "She needs disability forms filled out for back pain." (R. 188). Dr. Davis noted that he needed Dr. Johnson's records because he "has no idea what [Dr. Johnson] has done or not done in terms of a work-up." (*Id*.) Nonetheless, Dr. Davis diagnosed "[p]robable anxiety-depression, chronic, recurrent. Low back pain of uncertain etiology," and he completed a work related physical activities form and a pain form. (*Id*.) According to Dr. Davis, Kilburn could occasionally push and pull, frequently climb ladders and stairs, rarely do gross manipulation, frequently do fine manipulation, occasionally bend and stoop, frequently reach overhead, rarely be exposed to environmental problems, frequently operate motor vehicles and never work with or around hazardous machinery. (R. 192). He also opined that she could occasionally carry 10 pounds and frequently carry 5 pounds. He opined that she could sit and stand for 2 hours

13

in an 8 hour work day and she would probably miss more than four days per month of work. (*Id*.) With respect to pain, Dr. Davis opined that Kilburn's pain "is present to such an extent as to be distracting to adequate performance of daily activities or work," but physical activity would only increase her pain some "but not to such an extent as to prevent adequate functioning." (R. 193).

On March 22, 2005, Kilburn complained to Dr. Davis that the Flexeril did not help her back so he prescribed Robaxin. (R. 187).

On April 26, 2005, Kilburn returned to Dr. Anderson complaining about her right wrist. (R. 196). She reported that she had "[b]een doing some extra work," and "[s]he has a lot of work she needs to do." (*Id*.) She requested an injection. (*Id*.). Although she had some tenderness, she did not have a positive Finkelstein. (*Id*.) Dr. Anderson administered the shot. (*Id*.).

On May 10, 2005, Kilburn informed Dr. Anderson that she was not hurting. (R. 195). Dr. Anderson permitted her to remove the polypropylene splint but advised her to wear the splint if the pain returns. (*Id*.)

On June 20, 2005, Kilburn saw Dr. Davis requesting refills on prescriptions for Lipitor, Sinequan and Valium. (R. 178). Dr. Davis refilled her prescriptions but "held her to 10 mg of Valium. (*Id*.)

On July 5, 2005, Kilburn had "a little tenderness more in the snuffbox, questionably positive Finkelstein." (R. 194). Dr. Anderson opined that the lunate cyst was not contributing to her pain. (*Id.*).

> Then she wanted a prescription for Flexeril because whatever Dr. Davis had given her costs too much. She said he wouldn't refill it and I suggested that she call him back since he was writing these. She uses them for spasms in her back and she starts talking about some pain in her right leg. She is also questioning about getting an injection. I don't think another injection of the De Quervain's is appropriate right now. She said she is beginning to get pain putting stress on her left wrist and then she is telling me about her lawyer and her disability hearing which she thinks is coming up.

(*Id*.).

On October 25, 2005, Kilburn presented to Dr. Davis complaining of right knee pain. Dr. Davis refilled her Valium prescription and gave her samples of Mobic. (R. 207).

On November 8, 2005, Kilburn returned to Dr. Anderson. His treatment note reflects the following.

> She comes in and I haven't seen her since July. She has her splint and says it doesn't help that much. Heat seems to help more than anything. She is not particularly tender over the radial styloid. Slightly positive Finkelstein. She said she is getting some pain in her left hand now where she is using it on the dorsum of the hand and that is the way the right one started and she is afraid she is going to get it like the right one. She is having to do community service because that is now required in the project she lives in. She wanted a note to be excused from that, which I wrote. She also talked about some knee pain she was having anterior in the patella but it was getting lumpy down in the pes area, which wasn't tender and wasn't hurting. Dr. Davis had given her some sort of samples for the knee which hadn't helped. She is still talking to her lawyer about trying to get her disability. She says she has a hearing coming up in nine months. I mentioned injecting the right De Quervain. She never did take me up on it. I think she was here just to get this note.

(R. 211).

On December 6, 2005, Kilburn presented to Dr. Anderson complaining of numbness on the bottom of her right foot, pain in her big toe, knee and wrist. (R. 210). She had full range of motion in her knee and hip. (*Id*.) X-rays of her knee and toe were unremarkable.

15

(*Id.*).

In December 2005, Kilburn was taking Valium for anxiety, Acupril for high blood pressure, Lipitor for high cholesterol, and Adapin for depression. (R. 96). She was taking no pain medication.

The ALJ concluded that the plaintiff has the residual functional capacity to return to her past relevant work as domestic companion which is performed at the light exertional level.

> Light work involves lifting not more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. s 404.1567(b) (1981).

*Watkins v. Schweiker,* 667 F.2d 954, 957 (11th Cir. 1982). *See also Walker v. Bowen*, 826 F.2d 99, 1000 (11th Cir. 1987).

The plaintiff argues that the ALJ's residual functional capacity determination does not comply with Social Security Ruling 96-8p because the ALJ did not discuss, function by function, each of the seven strength demands before determining that Kilburn could perform light work. Social security rulings do not have the force and effect of statutes or regulations. *See Orn v. Astrue,* ___ F.3d ___, 2007 WL 2034287, *9 (9th Cir. 2007)*; Fagan v. Astrue*, 2007 WL 1895596, *2 fn.2 (10th Cir. 2007); *Walker v. Sec'y of Health & Human Servs.,* 943 F.2d 1257, 1295 (10th Cir. 1991); *Paxton v. Sec'y of Health & Human Servs.,* 856 F.2d 1352, 1356

16

(9th Cir.1988). However, the Rulings are generally entitled to deference. *Fagan*, 2007 WL 1895596 at *2. In this case, the ALJ gave sufficient deference to the Ruling when making his residual functional capacity finding. The ALJ made a thorough analysis of the testimony and considered all of the objective medical evidence in reaching his decision.

Moreover, even if the court assumes that the ALJ did not comply with the Ruling, Kilburn has not demonstrated that she has been prejudiced by the ALJ's failure. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)[12] (If the court assumes that "the Secretary did not comply with the ruling. . . .we inquire whether [the plaintiff] was prejudiced as a result of the noncompliance."). Kilburn testified that she mops, cleans house, drives, does crossword puzzles, and is able to use a knife and fork. (R. 218-19). She also rakes yards but she is slower than she used to be. (R. 220). When asked why she could not perform her past relevant work, Kilburn testified that she couldn't perform her duties in a timely manner. (R. 221). The court concludes that the plaintiff has failed to demonstrate that she was prejudiced. "While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability [Kilburn] claimed." *Freeman v. Barnhart*, 220 Fed. Appx. 957, *2 (11th Cir. 2007). The evidence in the record supports the ALJ's findings regarding the plaintiff's residual functional capacity. Accordingly, the court concludes that the ALJ's decision is supported by substantial evidence, and the ALJ did not err in concluding that the plaintiff could return to her past relevant work.

---

[12] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

## V.  Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.  A separate final judgment will be entered.

Done this 31st day of July, 2007.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE